UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| FREDERICK E. TAYLOR, | CASE NO. 5:17CV73 |
| Plaintiff, | JUDGE SARA LIOI |
| v. | Magistrate Judge George J. Limbert |
| NANCY A. BERRYHILL[1], ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE |
| Defendant. | |

Plaintiff Frederick E. Taylor ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. In his brief on the merits, filed on May 26, 2017, Plaintiff asserts that the administrative law judge's ("ALJ") decision is not supported by substantial evidence. ECF Dkt. #13. Defendant filed a response brief on June 21, 2017. ECF Dkt. #14. Plaintiff did not file a reply brief.

For the following reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case in its entirety with prejudice.

## I. PROCEDURAL HISTORY

On December 5, 2013, Plaintiff protectively filed an application for DIB. Transcript ("Tr.") at 14.[2] Plaintiff also filed an application for SSI on May 2, 2014. *Id.* The applications were denied initially and upon reconsideration. *Id.* Plaintiff then requested a hearing, which was held on October 29, 2015. *Id.* at 476. On December 18, 2015, the ALJ issued a decision denying Plaintiff's claims. *Id.* at 11. Subsequently, the Appeals Council denied Plaintiff's

---

[1]On January 23, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

[2]The Transcript in this case was not filed electronically. *See* ECF Dkt. #11. A paper copy of the transcript was filed and has been reviewed. The paper copy of the Transcript has been forwarded to the Court in conjunction with the filing of this Report and Recommendation.

request for review. *Id.* at 6. Accordingly, the December 18, 2015, decision by the ALJ stands as the final decision.

Plaintiff filed the instant suit seeking review of the ALJ's December 18, 2015, decision on January 11, 2017. ECF Dkt. #1. On May 26, 2017, Plaintiff filed a brief on the merits. ECF Dkt. #13. Defendant filed a response brief on June 21, 2017. ECF Dkt. #14. Plaintiff did not file a reply brief.

## II. RELEVANT MEDICAL AND TESTIMONIAL EVIDENCE

### A. Medical Evidence

Plaintiff first visited Paul Garfinkle, M.D., an ophthalmologist, in July 2010 for an evaluation for diabetic retinopathy. Tr. at 185. Dr. Garfinkle diagnosed Plaintiff with severe diabetic retinopathy and recommended treatment to stabilize his eyes and prevent further progression. *Id.* Plaintiff continued to receive treatment from Dr. Garfinkle through 2010, 2011, 2012, and 2013. *Id.* at 165-86. On several occasions, Dr. Garfinkle indicated that Plaintiff did not check his blood sugar and used only over-the-counter reading glasses. *Id.* at 167-68, 170, 172.

In March 2011, Plaintiff saw Suzanne Morgan, D.O., and complained of eye problems. Tr. at 206. Dr. Morgan diagnosed eye damage from uncontrolled diabetes, and indicated that Plaintiff had "very poor insight" into his diabetes and needed to control his sugar intake. *Id.* Dr. Morgan stated that Plaintiff needed to take his medication as prescribed and "get labs" as directed. *Id.* In June 2011, Dr. Morgan indicated that Plaintiff "adamantly refused insulin" and refused any injections. *Id.* at 207. Plaintiff told Dr. Morgan that he was doing well and had no significant complaints in September 2011. *Id.* at 208-209. Dr. Morgan indicated that Plaintiff was not monitoring his diet, exercising, or testing his blood sugar level at home, and that he was noncompliant with medications. *Id.* at 208-10. Dr. Morgan advised Plaintiff of the consequences of uncontrolled diabetes and hypertension, including loss of vision. *Id.* at 210.

Plaintiff told Dr. Morgan that he was doing well in January 2012. Tr. at 214. Dr. Morgan again noted Plaintiff's noncompliance with diet, exercise, and sugar testing. *Id.* Plaintiff again refused insulin, indicating that he would instead change his diet. *Id.* at 215. Dr.

Morgan also noted Plaintiff's noncompliance in May 2012. *Id.* at 217. Plaintiff denied any problems regarding his insulin in September 2012, and told Dr. Morgan that he drank soda daily and did not watch his diet, exercise, or test his blood sugar levels. *Id.* at 220. Dr. Morgan again warned Plaintiff of the consequences of his noncompliance and informed him that his eye issues would improve or stabilize if his diabetes was better controlled. *Id.* at 222. In April 2013, Dr. Morgan echoed this warning and adjusted Plaintiff's medication. *Id.* at 228. In July 2013, Plaintiff informed Dr. Morgan that he was running short on his medication and was "going to try to get disability" because his eyes were "very bad" and he was "no longer able to work." Tr. at 229. Dr. Morgan again noted Plaintiff's continued noncompliance, including drinking soda daily, failing to check his blood sugar levels, and a poor diet. *Id.* Plaintiff was again told that his eye issues would improve or stabilize if his diabetes were better controlled. *Id.* at 231. The same advice was given to Plaintiff in August 2013. *Id.* at 233.

In October 2013, Plaintiff saw Dr. Garfinkle and was diagnosed with macular edema that was stable. Tr. at 256. Plaintiff returned to Dr. Morgan in November 2013 and acknowledged that he did not check his blood sugar at home and did not take insulin with snacks, which generally consisted of one or two hotdogs in the afternoon. *Id.* at 234. Plaintiff declined a dietary consultation. *Id.* at 236. As before, Dr. Morgan advised Plaintiff that his eye issues would stabilize or improve if his diabetes was better controlled. *Id.* In January 2014, Dr. Morgan noted that Plaintiff's blood sugar was elevated, despite his claims that he was compliant with medications and was eating "pretty good." *Id.* at 237, 271. Plaintiff indicated that he was only taking insulin with larger meals and not with snacks, such as a cheese sandwich or a bowl of macaroni and cheese. *Id.* at 237. Plaintiff denied any headaches, lightheadedness, or dizziness. *Id.* In February 2014, Plaintiff informed Dr. Morgan that his eyes bothered him and that he was still waiting on a disability determination. *Id.* at 275. Plaintiff stated that he did not have problems with insulin, and that he skipped doses when he was not at home and rarely took mealtime insulin more than twice a day. *Id.* Dr. Morgan continued Plaintiff's medication and noted that she would look into various types of syringes Plaintiff could use to administer the doses. *Id.* at 277.

Also in February 2014, Dr. Garfinkle diagnosed Plaintiff with severe non-proliferative diabetic retinopathy in both eyes. Tr. at 258-59. In March 2014, Dr. Garfinkle completed an assessment of Plaintiff's vision and noted glare, decreased vision, light sensitivity, and difficulty focusing. *Id.* at 315. Plaintiff's visual acuity after best correction in his right eye was 20/40 and 20/80 in his left eye. *Id.* Dr. Garfinkle found that Plaintiff could: rarely use depth perception and accommodation; occasionally perform activities involving near and far acuity and color vision; frequently perform activities involving field of vision; work with large and small objects; avoid ordinary hazards; and perform activities without requiring unscheduled breaks during the day. *Id.* at 316.

Plaintiff told Dr. Morgan in March 2014 that he only took his insulin twice a day, instead of three times per day as prescribed, and that he had no difficulty reading the units on the syringe when he used reading glasses. *Id.* at 278. Also in March 2014, Dr. Morgan completed a "Diabetes Mellitus Medical Source Statement." *Id.* at 318-21. Dr. Morgan indicated that she had treated Plaintiff for three years for uncontrolled diabetes with retinopathy, hypertension, hyperlipidemia, and obesity, with symptoms including fatigue, difficulty walking, retinopathy, and uncontrolled blood sugar. *Id.* at 318. It was noted that Plaintiff had significant limitations due to vision loss secondary to retinopathy, was at risk for hypoglycemia, and experienced depression. *Id.* at 318-19. Dr. Morgan assessed that Plaintiff could: sit for two hours at a time, up to two hours total in a day; stand for fifteen minutes at a time, for less than two hours a day; and walk one block at a time and would need to walk every thirty minutes. *Id.* at 319. Continuing, Dr. Morgan indicated that Plaintiff: would need to take unscheduled breaks twice per day; must avoid concentrated exposure to extreme cold, high humidity, and cigarette smoke; would have difficulty due to vision impairment; and would be capable of low stress work. *Id.* at 321. Dr. Morgan indicated that Plaintiff's "largest limitation is his vision impairment" which had progressed while Plaintiff was under her care. *Id.*

In April 2014, Plaintiff told a Social Security representative that his vision was becoming worse and that it was difficult to read fine print. Tr. at 36. Plaintiff did not have problems watching television and he was able to drive, and he stated that he had an appointment with his

eye doctor in June 2014 and would inquire about glasses at the appointment. *Id.* Later in April 2014, Leslie Green, M.D., opined that Plaintiff could perform light work with additional postural limitations. *Id.* at 38. Dr. Green did not include any environmental limitations in her functional assessment. *Id.* at 39.

In June 2014, Dr. Morgan indicated that Plaintiff reported no problems with his medication regime. Tr. at 281. It was noted that Plaintiff had changes in his vision due to diabetic retinopathy and that he denied any lightheadedness or dizziness. *Id.* In July 2014, Dr. Garfinkle indicated that Plaintiff's vision was 20/25 in his right eye and 20/80 in his left eye, without correction. *Id.* at 260. Dr. Garfinkle stated that Plaintiff's retinopathy was severe but stable and that his macular edema was not visually significant, and stressed the importance of blood sugar control to prevent the progression of the retinopathy. *Id.* at 263, 297.

Plaintiff told Dr. Morgan in September 2014, that he was feeling well, but had run out of medication. Tr. at 285-86. Dr. Morgan noted that Plaintiff was noncompliant with diet and exercise, and that his blood sugar level remained unchanged. *Id.* at 285. It was recommended that Plaintiff undergo an endocrinology consultation, but Plaintiff declined due to the cost. *Id.* at 288. In November 2014, Plaintiff complained to Dr. Morgan of occasional eye pain in sunlight, but denied any issues otherwise. *Id.* at 264. Plaintiff also complained to Dr. Morgan about swelling in his feet and athlete's foot in December 2014. *Id.* at 289. In February 2015, Plaintiff told Dr. Morgan that both of his eyes bothered him and that he was waiting on disability. *Id.* at 275. Plaintiff acknowledged that he drank soda daily, rarely checked his blood sugar, was concerned about using syringes because of his vision difficulties, and rarely took insulin three times per day as prescribed. *Id.*

In March 2015, Plaintiff reported to the emergency room, complaining of swelling in his right foot and a wound on his big toe. Tr. at 378, 386. Plaintiff was prescribed pain medication and an antibiotic, and was told to follow up with the wound clinic. *Id.* at 381, 386. That same week, a CT scan revealed a fatty liver and a few mildly enlarged lymph nodes. *Id.* at 362. Plaintiff returned to the emergency room the following week and requested more pain medication for his right leg and big toe. *Id.* at 367, 375-76. Pain medication was prescribed and

Plaintiff was given information on diabetic foot care. *Id.* at 371, 374-75. An electroencephalogram performed near the end of March 2015 showed no evidence of radiculopathy or myopathy. *Id.* at 353-54. An eye examination performed by Dr. Garfinkle the following day showed that Plaintiff's diabetic retinopathy was stable and that his macular edema was not visually significant. *Id.* at 166, 330. Dr. Garfinkle noted that Plaintiff did not check his blood sugar regularly, declined to administer any treatment, and recommended a follow-up treatment in six weeks. *Id.* at 165, 330. In May 2015, Plaintiff returned to Dr. Garfinkle for treatment, noting that his blood sugar had been running around 200, although he did not check it regularly. *Id.* at 331. Dr. Garfinkle again assessed diabetic retinopathy, severe and stable, and diabetic macular degeneration, not visually significant. *Id.* at 334.

Plaintiff returned to the emergency room in June 2015, complaining of unresolved right leg swelling. Tr. at 387. An evaluator expressed concern over congestive heart failure and admitted Plaintiff for an evaluation. *Id.* at 387, 390. Plaintiff indicated that he had gained eighty pounds over the last six months and that his activities were limited due to leg pain. *Id.* at 393. A cardiologist opined that Plaintiff's issues were related to his morbid obesity and likely sleep apnea, and expressed concerns about congestive heart failure. *Id.* at 394. Akbar Shar, M.D., found it "quite evident" that Plaintiff had room to improve his diet, which was high in calories and essentially uncontrolled. *Id.* at 395. Plaintiff's blood sugar was elevated to 395, and the clinician noted that Plaintiff had been noncompliant with a diabetic diet and had been eating cheeseburgers from an outside vendor while he was hospitalized. *Id.* at 399.

Plaintiff returned to Dr. Garfinkle in June 2015 reporting that his vision was stable and that he had no pain or discomfort, although it sometimes took him a while to focus. Tr. at 335. Dr. Garfinkle measured Plaintiff's visual acuity as 20/30 in his right eye and 20/80 in his left eye, and assessed stable diabetic retinopathy and improved muscular edema. *Id.* at 342.

Plaintiff returned to the emergency room in July 2015 complaining of general malaise. Tr. at 408-18. Testing showed negative blood cultures, but additional testing showed medication-induced renal failure. *Id.* at 408-18, 431. An abdominal CT scan was unremarkable, and Plaintiff was stabilized, had his medications adjusted, and was discharged. *Id.* at 409, 423.

-6-

In July 2015, Dr. Garfinkle noted that Plaintiff's vision was stable and no injections were warranted. Tr. at 165. Later that month, Plaintiff complained of difficulty reading, but denied dryness, itchiness, or tearing. *Id.* at 343-47. Dr. Garfinkle measured Plaintiff's visual acuity at 20/30 in the right eye and 20/80 in the left eye, and assessed stable diabetic retinopathy and improved muscular edema. *Id.* at 344, 346. In September 2015, Plaintiff complained of occasional blurred vision, especially when reading, which improved with the use of reading glasses. *Id.* at 348. Plaintiff's diabetic retinopathy was stable, but his muscular edema was slightly increased, and Dr. Garfinkle administered an injection. *Id.* at 349, 352.

### B. Testimonial Evidence

At the hearing held on October 29, 2015, Plaintiff testified that he was a fifty-one year old high school graduate with past work detailing cars. Tr. at 483, 486, 488. Plaintiff stated that he lived with his parents and was unable to work due primarily to vision problems. *Id.* at 481, 486. Continuing, Plaintiff testified that he had diabetes, severe retinopathy, macular edema, severe fatigue, and intermittent numbness in his hands and feet, and that he had multiple surgeries and injections in his eyes. *Id.* at 483. Additionally, Plaintiff stated that he had shoulder problems and a high body mass index. *Id.*

Plaintiff indicated that he drove, but tried to stay close to home, and that the most he drove was thirty minutes. *Id.* at 487-88. According to Plaintiff, the last time he worked was in 2013 when he performed work detailing cars. *Id.* at 489.

Plaintiff testified that on his last day of work, July 22, 2013, he missed a number of spots when detailing a car and that he and his boss agreed that he would no longer remain employed as he was unable to see well enough to detail properly. Tr. at 490. Continuing, Plaintiff indicated that if he held an item more than three feet away it became blurry, and that he could see better from a distance of one foot if he wore reading glasses. *Id.* at 492. Plaintiff testified that his fifty-inch television was blurry from a distance of ten feet, and that he needed to watch from a distance of about four feet. *Id.* at 493. According to Plaintiff, after watching a couple of hours of television he would need to lay down in bed with his eyes closed for fifteen to twenty minutes before he could watch again. *Id.*

Plaintiff testified that although the primary obstacle to work was his vision, he also suffered from asthma, obesity, and diabetes, and had to take three injections and thirteen pills a day. Tr. at 494. Continuing, Plaintiff stated that it was difficult for him to walk and he had to use an inhaler due to his asthma. *Id.* at 494-95. Plaintiff testified that he was unable to run due to his neuropathy and that he could walk, but sometimes his legs gave out and he fell. *Id.* at 495. Describing his shoulder pain, Plaintiff indicated that he was unable to throw a ball, had undergone six weeks of physical therapy for his shoulder, and took muscle relaxants for his shoulder pain since other medication was ineffective. *Id.* at 496-97. Plaintiff stated that he could read magazines for fifteen minutes before his eyes would hurt and would then need to rest his eyes for twenty minutes before he could continue reading. *Id.* at 499.

Continuing, Plaintiff indicated that he spent most of his day watching television, although he tried to assist his parents when he could by preforming tasks such as purchasing gas for the lawn mower, picking up tree branches, and similar household chores. Tr. at 499-500. Plaintiff testified that: he occasionally cooked his own meals and helped clean bathrooms; he did not wash laundry; his father mowed the yard, but he sometimes helped with edging; and that he occasionally went out to a movie, store, or to visit his brother, who lived about thirty minutes away. *Id.* at 501-504. Continuing, Plaintiff testified that he stayed in bed some days due to low energy. *Id.* at 504.

In response to questioning by his attorney, Plaintiff stated that he had very low energy due to diabetes and his medication. Tr. at 504-505. Plaintiff indicated that it took him a couple of minutes to focus in bright outdoor light, he did not drive often at night because it was harder for him to see, and that he was concerned he would be unable to pass his driving test when his license came up for renewal. *Id.* at 507, 509. According to Plaintiff, his legs swelled and he stumbled at least once a week and occasionally fell. *Id.* at 511-12.

The ALJ then asked the vocational expert ("VE") a hypothetical question regarding an individual with Plaintiff's residual functional capacity ("RFC") and vocational profile. Tr. at 515. The VE testified that such and individual could perform work as a mail clerk, packager, and/or office cleaner. *Id.* at 516.

### III.     RELEVANT PORTIONS OF THE ALJ'S DECISION

On December 18, 2015, the ALJ issued a decision finding that Plaintiff was not disabled under the Social Security Act. Tr. at 11. First, the ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018. *Id.* at 16. The ALJ then indicated that Plaintiff had not engaged in substantial gainful activity since July 22, 2013, the alleged onset date. *Id.* Continuing, the ALJ found that Plaintiff had the following severe impairments: asthma; diabetes mellitus with associated polyneuropathy and hyperglycemia; acute renal failure with associated hyperkalemia; lymphedema with the possibility of right heart failure; diabetic retinopathy; and morbid obesity. *Id.* The ALJ then determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 17.

After consideration of the record, the ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following additional limitations: occasionally lifting and carrying up to twenty pounds; frequently lifting and carrying up to ten pounds; sitting for six hours in an eight-hour workday; standing/walking for six hours in an eight-hour workday; pushing and pulling as much as he could lift and carry; never climbing ladders, ropes, or scaffolds; occasionally climbing ramps and stairs; occasionally stooping, balancing, kneeling, and crouching; no crawling; able to avoid ordinary hazards in the workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles; no work around unprotected heights, moving mechanical parts, or operating a motor vehicle; and only occasional exposure to wetness and humidity. *Id.* at 17-18.

Following the RFC finding, the ALJ indicated that Plaintiff: was unable to perform past relevant work; was a younger individual on the alleged onset date and subsequently changed age category to closely approaching old age; and had a high school education and could communicate in English. *Id.* at 21. The ALJ then stated that the transferability of jobs skills was not an issue because Plaintiff's past relevant work was unskilled. *Id.* Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id.* at 22. Based on

the above findings, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from July 22, 2013, through the date of the decision. *Id.*

## IV. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## V. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937(citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal citation omitted)). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).

## VI. LAW AND ANALYSIS

Plaintiff asserts that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ rejected the opinion of Plaintiff's treating physician; and (2) the hypothetical question contained an inaccurate portrayal of his maximum RFC. ECF Dkt. #13 at 8-14. First, Plaintiff states that he has two treating physicians who agree that he has significant work-related limitations due to his physical impairments alone. *Id.* at 8. Plaintiff indicates that Dr. Garfinkle opined that he had severe diabetic retinopathy including glare, decreased vision, light sensitivity, and difficulty focusing. *Id.* Continuing, Plaintiff states that Dr. Garfinkle opined that he had the following visual limitations: rarely use depth perception and accommodation; near and far acuity and color vision was limited to occasionally; and field of vision was limited to frequently. *Id.* Additionally, Plaintiff asserts that Dr. Morgan also found limitations caused by Plaintiff's visual impairment, and opined that Plaintiff had challenges managing his medications due to his visual impairments and that as a result he would be off task during the workday. *Id.* at 8-9.

Continuing, Plaintiff recognizes that the state reviewing physician, Geral Klyop, M.D., opined that he could perform light work and had no visual limitations. ECF Dkt. #13 at 9. Plaintiff

concedes that his vision was stable in February 2014 when he was evaluated by Dr. Klyop, but argues that Dr. Klyop did not have the updated medical records from Dr. Garfinkle. *Id.* Additionally, Plaintiff indicates that on reconsideration he stated that his vision had worsened, and that Dr. Green affirmed Dr. Klyop's opinion without the updated medical records from Dr. Garfinkle. *Id.* For these reasons, Plaintiff asserts that the ALJ's reliance on the opinions of the state reviewing physicians is not supported by substantial evidence. *Id.* at 10. Specifically, Plaintiff claims that the ALJ violated the treating physician rule when relying on the opinions of the state agency reviewing physicians rather than the opinions of Dr. Garfinkle and Dr. Morgan, his treating physicians. *Id.* at 9-13.

An ALJ must give controlling weight to the opinion of a treating source if the ALJ finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with the other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ decides to discount or reject a treating physician's opinion, he or she must provide "good reasons" for doing so. Social Security Rule ("SSR") 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore "be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied." *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he or she rejected or discounted the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544).

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet

-12-

the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, 375 Fed.Appx. 543, 551 (6th Cir. 2010). The Sixth Circuit has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Parks v. Social Sec. Admin.*, 413 Fed.Appx. 856, 864 (6th Cir. 2011) (quoting *Rogers*, 486 F.3d at 243 ). However, an ALJ need not discuss every piece of evidence in the administrative record so long as he or she considers all of a claimant's medically determinable impairments and the opinion is supported by substantial evidence. *See* 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 Fed.Appx. 661, 665 (6th Cir. 2004). Substantial evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (internal citation omitted).

Plaintiff also argues that the hypothetical question the ALJ posed to the VE did not take into consideration the full extent of his visual limitations. ECF Dkt. #13 at 13-14. Specifically, Plaintiff asserts that the question his counsel posed to the VE, containing the limitations as opined by Dr. Garfinkle, contained a more accurate depiction of his visual limitations. *Id.*

Defendant contends that: (1) the ALJ's finding that Plaintiff's subjective allegations of disability were not wholly credible or consistent with the evidence is supported by substantial evidence; (2) the ALJ properly considered medical opinion evidence of record and articulated appropriate reasons for declining to give controlling weight to the opinions of Dr. Morgan and Dr. Garfinkle; and (3) the ALJ's RFC assessment and hypothetical question accurately accounted Plaintiff's credibility limitations. ECF Dkt. #14 at 15-25.

First, Defendant asserts that the ALJ articulated a number of compelling reasons for finding that Plaintiff's subjective allegations of disability were not wholly credible. ECF Dkt. #14 at 15. Specifically, Defendant points out that in his initial Disability Report Plaintiff claimed that he was disabled due to diabetes, asthma, and high blood pressure, and represented that on some days his asthma bothered him, some days his eyes bothered him, and some days his blood sugar bothered him. *Id.* Defendant states that despite Plaintiff's allegations in his Disability Report, he testified at the hearing that: he was unable to walk well, run, or throw; his legs gave out; and he was limited

-13-

by arthritis and asthma. *Id.* According to Defendant, the ALJ noted that the objective evidence of record - namely, Plaintiff's physical examinations and diagnostic studies - were largely unremarkable, and there was minimal documentation of the alleged limitations in the treatment records. *Id.* at 15-16. Further, Defendant asserts that despite his testimony that he was terminated for vision issues in 2013, Plaintiff was diagnosed with diabetic retinopathy in July 2010. *Id.* at 16. Additionally, Defendant notes that in October 2013, shortly after the alleged onset date, Plaintiff told his eye doctor that he was "doing okay" and that his vision was stable. *Id.* Defendant indicates that treatment records from 2014 and 2015 show that Plaintiff's visual acuity, diabetic retinopathy, and macular edema were essentially stable and unchanged. *Id.* Continuing, Defendant states that the ALJ noted that treatment records generally showed that Plaintiff's eye issues were stable, if not improving, *Id.* (citing Tr. at 20).

Additionally, Defendant indicates that Plaintiff: told Dr. Morgan that he had no issues reading syringe markings when he used reading glasses; maintained a driver's license and drove despite allegedly disabling visual impairments; told a Social Security representative that although his vision was sometimes blurry, he had no problems watching television and he continued to drive; watched television most of the day and played cards with friends; went to movies and sporting events; helped with housework and cleaning; and helped with lawn care and edging. ECF Dkt. #14 at 17-18. Defendant asserts that these activities are inconsistent with disabling vision impairments and undermine the credibility of Plaintiff's allegations. *Id.* at 18.

Continuing, Defendant asserts that the ALJ also noted the abundant evidence of record showing that Plaintiff was noncompliant with treatment recommendations, including the following: Dr. Morgan repeatedly told Plaintiff his vision problems would improve or stabilize if he controlled his blood sugar and repeatedly commented on his failure to comply with diet, exercise, and other lifestyle changes; Plaintiff drank soda on a daily basis, failed to exercise, and rarely checked his blood sugar levels as advised; and Plaintiff ate cheeseburgers from an outside vendor while hospitalized rather than following the prescribed diabetes diet. ECF Dkt. #14 at 18. Defendant asserts that Plaintiff's non-compliance with recommended treatment is an appropriate consideration in the credibility assessment. *Id.* (citing *Ranellucci v. Astrue*, No. 3:11-cv-00640, 2012 WL

4484922, at *10 (M.D. Tenn. Sept. 27, 2012) (internal citation omitted)). Continuing, Defendant avers that the credibility determination rests with the ALJ, and that the ALJ properly evaluated Plaintiff's credibility and concluded that Plaintiff's allegations of disabling impairments were not wholly credible. *Id.* (citing 20 C.F.R. § 404.1529; SSR 96-7p).

Defendant then moves on to Plaintiff's assertion that the ALJ violated the treating physician rule and contends that the ALJ articulate appropriate reasons for the weight assigned to the medical opinions of record. ECF Dkt. #14 at 19. Regarding Dr. Garfinkle's opinion, Defendant states that the ALJ declined to assign controlling weight to the opinion because it was internally inconsistent and inconsistent with treatment records, and unsupported by Dr. Garfinkle's own medical findings. *Id.* at 20 (citing Tr. at 21, 315-16). Likewise, Defendant states that the ALJ declined to assign controlling weight to the opinion of Dr. Morgan because: many of the assessed limitations were based on vision issues, but Dr. Morgan was not a vision specialist; the record showed Plaintiff's vision was stable, with only occasional issues and blurring; Dr. Morgan did not identify any supporting evidence for the extreme functional limitations in her opinion; and Dr. Morgan offered no explanation of why Plaintiff's vision issues would result in such significant limitations. *Id.* at 21 (citing Tr. at 20-21, 318-21).

Continuing, Defendant addresses Plaintiff's complaints that: (1) the ALJ relied on opinions from state agency physicians that were not based on a review of all the treatment records in evidence since they were issued in 2014, before Dr. Garfinkle's treatment records and opinion were issued; and (2) the state agency physicians ignored Plaintiff's subjective reports about his deteriorating vision. ECF Dkt. #14 at 22. Defendant contends that Plaintiff's criticism is misplaced as Dr. Klyop, a state agency physician, based his opinion on the evidence of record available at the time, and at the time of Dr. Green's review it was acknowledged that Plaintiff complained that his condition had worsened, but no medical evidence was found to support greater limitations than those assessed by Dr. Klyop. *Id.* Defendant avers that there is nothing in the subsequent treatment records showing significant deterioration in Plaintiff's condition or otherwise calling into question the opinions submitted by Dr. Klyop and Dr. Green. *Id.* at 22-23. Moreover, according to Defendant, the ALJ did have an opportunity to review all treatment records and found that the records did not show

-15-

significant deterioration in Plaintiff's visual impairments and that the records were consistent with the RFC finding. *Id.* Defendant asserts that it is up to the ALJ to determine the weight assigned to each opinion, and the ALJ properly considered the medical evidence of record and that assessment should be upheld. *Id.* at 23 (citing *Justice v. Comm'r of Soc. Sec.*, 515 Fed. Appx. 583. 588 (6th Cir. 2013)).

Moving on to Plaintiff's argument regarding the hypothetical question posed by the ALJ to the VE, Defendant contends that the hypothetical question accurately accounted for Plaintiff's credible limitations. ECF Dkt. #14 at 23. Defendant states that the ALJ accounted for Plaintiff's severe diabetic retinopathy and found that Plaintiff's RFC did not require additional limitations, and that the additional limitations Plaintiff argues should have been included in the RFC finding are not supported by credible evidence. *Id.* at 24. Specifically, Defendant notes that Plaintiff's proposed hypothetical question incorporates some of the limitations imposed by Dr. Garfinkle, however, the ALJ provided good reasons for discrediting Dr. Garfinkle's opinion and thereby not incorporating all the limitations contained therein in the RFC finding. *Id.* at 24-25.

Plaintiff's arguments are without merit. The ALJ provided good reasons for discounting the opinions submitted by Dr. Garfinkle and Dr. Morgan. Regarding Dr. Morgan's opinion, the ALJ stated:

> No controlling weight is given to the treating medical source statement of Dr. Morgan. Dr. Morgan limited [Plaintiff] to less than sedentary work, with sitting for two hours per workday, standing/walking for less than two hours per workday, needing to take unscheduled breaks twice per workday, and difficulty with concentration due to his vision impairment. Dr. Morgan based many of these limitations on [Plaintiff's] vision issues, yet she is not a vision specialist. Moreover, as described above, [Plaintiff's] vision is stable and improving, with only occasional issues and blurring remaining. In addition, Dr. Morgan provided little supporting evidence for her extreme limitations, and she did not reveal why [Plaintiff's] vision issues would result in such significant limitations in standing, walking, and sitting. Furthermore, Dr. Morgan indicated that she did not perform a formal functional capacity evaluation, and she therefore could not opine on [Plaintiff's] functioning, such as his lifting and manipulative abilities, resulting in an incomplete evaluation.

Tr. at 20-21 (internal citations omitted). The ALJ explained that Dr. Morgan's opinion was assigned little weight because: she was not a vision specialist; evidence showed that Plaintiff's vision was stable and improving; little evidence was offered in support of the extreme limitations assessed by

Dr. Morgan; and Dr. Morgan's evaluation was incomplete. *See id.* Plaintiff does not explain how these reasons offered by the ALJ for discounting Dr. Morgan's opinion do not constitute good reasons, instead generally stating that the ALJ violated the treating physician rule. Despite Plaintiff's argument, the ALJ did provide good reasons for discounting Dr. Morgan's opinion, most notably that Dr. Morgan provided little evidence supporting the extreme limitations contained in her opinion.

As for Dr. Garfinkle's opinion, the ALJ stated:

> [Dr. Garfinkle's] assessment is internally inconsistent, in particular the supposed ability of [Plaintiff] to avoid hazards and work with small objects in spite of significant limitations with depth perception and accommodation. In addition, this assessment is inconsistent with the medical record for the reasons noted above, including [Plaintiff's] improved and stable vision. Finally, like Dr. Morgan, Dr. Garfinkle provided little supporting evidence aside from listing [Plaintiff's] diagnosis and his subjective allegations (which are not fully credible as detailed above).

Tr. at 21 (internal citations omitted). The ALJ explained that Dr. Garfinkle's opinion was assigned little weight because: the opinion was internally inconsistent and inconsistent with the medical record; and Dr. Garfinkle provided little supporting evidence other than Plaintiff's subjective allegations, which were not wholly credible. *See id.* Again, Plaintiff does not explain how these reasons offered by the ALJ for discounting Dr. Garfinkle's opinion do not constitute good reasons, instead relying on alleged general violations of the treating physician rule. The ALJ provided good reasons for discounting the opinions of Dr. Morgan and Dr. Garfinkle, and therefore did not violate the treating physician rule when assigning those opinions less than controlling weight. Further, Plaintiff's argument that the state agency physicians did not have the benefit of Dr. Garfinkle's opinion when issuing their opinions does little to advance his claims. Plaintiff cites to no requirement that state agency physicians revise their opinions when new medical or opinion evidence is created, and, in any event, the ALJ had access to all of the medical and opinion evidence when issuing the decision.

Plaintiff also claims that the hypothetical question posed by the ALJ to the VE did not take into consideration the full extent of Plaintiff's visual limitations since it did not incorporate the restrictions contained in Dr. Garfinkle's opinion. ECF Dkt. #13 at 13-14. However, as stated above, the ALJ offered good reasons for discounting Dr. Garfinkle's opinion, namely that it was internally

-17-

inconsistent, inconsistent with the medical evidence, and based on little supporting evidence other than Plaintiff's subjective allegations, which were not wholly credible. As such, the ALJ was under no obligation to incorporate all the limitations contained in Dr. Garfinkle's opinion into the RFC finding. For these reasons, the undersigned finds that the ALJ did not violate the treating physician rule and posed a proper hypothetical question to the VE. Accordingly, the ALJ's decision is supported by substantial evidence.

## VII. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case in its entirety with prejudice.


Date: January 4, 2018                              */s/George J. Limbert*
                                                   GEORGE J. LIMBERT
                                                   UNITED STATES MAGISTRATE JUDGE



ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).